UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DAVID ASA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 1:17-cv-256 |
| ) | Judge Phillips |
| VERIZON COMMUNICATIONS, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This civil action was removed from the Circuit Court for Hamilton County, Tennessee, based on diversity jurisdiction [Doc. 1]. Plaintiff David Asa asserts claims of negligence, negligent infliction of emotional distress, gross negligence, and violation of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-104, *et seq*. These claims arise from events in 2015 – 2017 in which plaintiff's cellular services account with Verizon Wireless was hacked by an unknown person.

Verizon Communications, Inc. is the named defendant. However, Verizon Communications Inc. has responded to the complaint by advising that Verizon Communications, Inc. is an inactive corporation that provided no services to the plaintiff [Doc. 12-1 at ¶ 2]. Verizon Communications Inc. is a holding company that indirectly wholly owns Cellco Partnership d/b/a Verizon Wireless [*Id*. at ¶ 3]. Cellco Partnership (hereinafter "Verizon Wireless") is the business entity that provided wireless service to the plaintiff [*Id*. at ¶ 4].

Verizon Wireless has moved the Court to compel plaintiff to arbitrate all of his claims and to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6) [Doc. 12]. Verizon Wireless has filed supporting briefs and exhibits [Docs. 13, 22] and plaintiff has responded in opposition [Docs. 19, 21]. For the reasons set forth herein, the defendant's motion [Doc. 12] will be **GRANTED**.

I. **Relevant Facts**[1]

In October 2013, plaintiff entered into contract with Verizon Wireless for cellular services [Doc. 1-1 at ¶ 8]. On November 4, 2013, plaintiff assented to a receipt-form Customer Agreement with Verizon Wireless, which included a mandatory arbitration provision [Doc. 12-4].[2] On September 23, 2014, plaintiff executed a receipt-form Customer Agreement with Verizon Wireless, which also included a mandatory arbitration provision [Doc. 12-5]. In pertinent part, this Customer Agreement provided:

> I AGREE TO THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT … WHICH I HAVE HAD THE OPPORTUNITY TO REVIEW. I UNDERSTAND THAT I AM AGREEING TO … SETTLEMENT OF DISPUTES BY ARBITRATION AND OTHER MEANS INSTEAD OF JURY TRIALS, AND OTHER IMPORTANT TERMS IN THE CUSTOMER AGREEMENT.

---

[1]For the purposes of a motion to dismiss, the Court takes the factual allegations in the complaint [Doc. 1-1] as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").

[2]Verizon Wireless, through the affidavit of Alexander V. Shekhter [Doc. 12-1], has submitted copies of the agreements between the parties. Because these documents are central to plaintiff's claims, the Court may consider them in reviewing a motion to dismiss without converting the motion to one for summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court also notes that the plaintiff has not objected to the consideration of these exhibits.

[*Id.* at pp. 2—3]. On March 15, 2017, plaintiff added a device and changed services to his account, once again executing an agreement that included an arbitration provision [Doc. 12-6].

The full Verizon Wireless Customer Agreement, referenced in each of the receipt-form agreements signed by plaintiff, includes the following arbitration provision:

> YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. … THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US … WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB").

[Doc. 12-3 at pp. 5—6].

In September 2015, an unidentified party attempted to gain unauthorized access to plaintiff's Verizon Wireless account [Doc. 1-1 at ¶ 9]. In March 2016, plaintiff received notice of an online user account password change [*Id.* at ¶ 10]. Plaintiff subsequently learned that an unidentified party attempted to activate an unauthorized cellular phone on his Verizon Wireless account by calling the customer service call center [*Id.*]. Following the March 2016 incident, Verizon Wireless assigned plaintiff a password and a password-protected verification process, by which plaintiff would be required to provide the assigned password to receive customer support from Verizon Wireless, including activating a new phone [*Id.* at ¶ 11].

On April 15, 2017, an unidentified party accessed plaintiff's Verizon Wireless account several times to activate an unauthorized cellular phone [*Id.* at ¶¶ 12—21]. Plaintiff took steps to thwart this unauthorized activity to his account by using Verizon's online support system and by speaking with Verizon's customer service representatives by phone and in person [*Id.*]. Verizon Wireless representatives repeatedly advised that plaintiff's account had been flagged and that additional security measures were added to protect his account [*Id.*]. Nevertheless, the next day, April 16, 2017, an unauthorized party again activated an unauthorized cellular phone on plaintiff's Verizon Wireless account [*Id.* at ¶ 22].

During the times when the unauthorized phone was activated on plaintiff's account, the hacker was able to use the unauthorized phone to obtain password resets to plaintiff's online commercial, personal, and media accounts [*Id.* at ¶ 23]. These password resets allowed the hacker access to plaintiff's Bitcoin account, from which 7.3 bitcoins were transferred at a present value of over $32,000 [*Id.*]. Plaintiff seeks compensatory, punitive, and treble damages, and attorney's fees and costs [*Id.* at p. 13].

**II.     Meet and Confer**

Plaintiff first complains that Verizon Wireless did not comply with this Court's Order Governing Motions to Dismiss, which requires parties to "meet and confer prior to the filing of a motion to dismiss" [Doc. 5]. Plaintiff notes that defendant filed the motion to dismiss and compel arbitration on October 12, 2017 [Doc. 12], but that defense counsel did not contact plaintiff's counsel until October 13, 2017 to discuss the motion [Doc. 15].

4

Plaintiff argues that the Court should deny the motion based on defendant's failure to meet and confer before filing the instant motion [Doc. 21 at pp. 1—2].

Verizon Wireless responds that the "meet and confer" requirement does not apply here because it seeks to compel arbitration and dismissal is an alternative remedy [Doc. 22 at p. 12]. Verizon Wireless also argues that it "substantially complied" with the Court's order by filing its certification on October 16, 2016 [Doc. 15], the date that its response to the complaint was due.

The Court's Order provides that motions to dismiss pursuant to Fed. R. Civ. P. 12(b) are "discouraged if the defect is likely to be cured by filing an amended pleading" [Doc. 5]. Thus, "the parties must meet and confer prior to the filing of a motion to dismiss to determine whether it can be avoided" [*Id*.]. Plaintiff is correct that Verizon Wireless has not complied with the strict letter of the Court's order by conferring with plaintiff *prior to* filing the pending motion. Verizon Wireless's argument that it is relieved of the obligation to meet and confer with plaintiff because dismissal is an alternate remedy is specious. Verizon Wireless's motion is styled as a "motion to compel arbitration *and to dismiss*" and seeks relief pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6). Nevertheless, the Court finds that Verizon Wireless's counsel did make a good faith attempt to confer with plaintiff's counsel regarding the motion. Further, if the Court were to adopt plaintiff's course of action and deny Verizon Wireless's motion solely on this basis, the Court reasonably anticipates that Verizon Wireless would merely re-file its motion. Such gymnastics would not be a wise use of the parties' or the Court's resources. Accordingly, the Court declines

plaintiff's invitation to deny the motion for failure to strictly comply with the meet and confer requirement.

### III. Analysis

The Federal Arbitration Act ("FAA") represents a strong public policy in favor of arbitration. *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). Arbitration agreements must satisfy two conditions for the FAA to apply: (1) it must be in writing; and (2) it must be part of a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The parties do not dispute that the arbitration provision in the Verizon Wireless Customer Agreement is in writing and it affects interstate commerce. *See United States v. Weathers*, 169 F.3d 336, 341 (6th Cir.), *cert. denied*, 528 U.S. 838 (1999) (cellular telephones are instrumentalities of interstate commerce). Further, the Customer Agreement plainly states that "THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT" [Doc. 12-3 at p. 5].

The FAA provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a valid arbitration agreement governs a claim, courts must compel arbitration. *Id.* §§ 3–4. "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 812 (6th Cir. 2008) (quoting *Javitch v. First Union Sec., Inc.,* 315 F.3d

619, 624 (6th Cir. 2003). The Customer Agreement arbitration provision broadly covers "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US … INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS" [Doc. 12-3 at p. 5]. Plaintiff does not argue that his claims are excluded from the scope of the arbitration agreement. Based on the agreement's expansive language, the Court can easily conclude that plaintiff's claims against Verizon Wireless arise from the "equipment, products and services" he received. *See NCR Corp.*, 512 F.3d at 813 ("When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration") (quoting *Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 482 n.10 (6th Cir. 2006)). Thus, the arbitration provision of the Customer Agreement covers plaintiff's claims.

Plaintiff raises several arguments as to the enforceability of the arbitration agreement. If the validity of the agreement to arbitrate is "in issue," then the Court must first resolve that question. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The burden is on the party opposing arbitration to show that the agreement is not enforceable. *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000). In order to meet this burden, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, a showing that mirrors the summary judgment standard. *Great Earth*, 288 F.3d at 889. In other words, the plaintiff must present evidence "such that a reasonable finder of fact could conclude that no valid agreement to

arbitrate exists." *Id.* Further, the Court must consider claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole. *Id.* at 890.

        A.      <u>Whether the Contract is an Adhesion Contract or Unconscionable</u>

In Tennessee, "[u]nconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability)." *Trinity Industries, Inc. v. McKinnon Bridge Co., Inc.,* 77 S.W.3d 159, 170 (Tenn. Ct. App. 2001). Courts "have tended to lump the two together and speak of unconscionability resulting 'when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other.'" *Id.* at 171 (quoting *Haun v. King,* 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)); *see Skaan v. Fed. Exp. Corp.,* No. W2011-01807-COA-R3-CV, 2012 WL 6212891, at *9 (Tenn. Ct. App. Dec. 13, 2012). "In determining whether a contract is unconscionable, a court must consider all the facts and circumstances of a particular case." *Haun,* 690 S.W.2d at 872 (quoting *Brenner v. Little Red Schoolhouse, Ltd.*, 274 S.E. 2d 206, 210 (N.C. 1981)); *Dortch v. Quality Rest. Concepts, LLC*, No. 1:12-CV-198, 2013 WL 1789603, at *3 (E.D. Tenn. Apr. 26, 2013) (Collier, J.).

Plaintiff argues that the arbitration clause is unenforceable for lack of mutual assent, or procedurally unconscionable [Doc. 21 at pp. 4—5]. Plaintiff claims he did not assent to arbitration by merely "carrying forward service from childhood to adulthood and

8

periodically signing terms of incorporation" [*Id*. at p. 4]. He further claims that he "is a modern businessman who runs his enterprises primarily, and often time [*sic*] entirely through his mobile phone" [*Id*. at p. 4]. Thus, plaintiff claims he "had no choice but to be subject to an arbitration clause" and points to the service agreements of other cellular service providers [Docs. 19-1 – 19-5], which also contain arbitration provisions, as evidence that the arbitration clause at issue amounts to a contract of adhesion [*Id*. at pp. 4—5].

Under Tennessee law, an adhesion contract is "a standardized form offered on what amounts to a 'take it or leave it' basis, without affording the weaker party a realistic opportunity to bargain, and under conditions whereby the weaker party can only obtain the desired product or service by submitting to the form of the contract." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 975–76 (6th Cir. 2007) (quoting *Buraczynski v. Eyring,* 919 S.W.2d 314, 320 (Tenn. 1996)). However, a contract is not adhesive merely because it is a standardized form offered on a take-it-or-leave-it basis. Plaintiff must also present evidence of "the absence of a meaningful choice for the party occupying the weaker bargaining position." *Cooper*, 367 F.3d at 501—02 (6th Cir. 2004).

Verizon Wireless correctly notes that the agreements from other cellular providers are unauthenticated and are therefore inadmissible [Doc. 22 at p. 4]. *See Winston v. Cargill, Inc.*, 699 F. Supp. 2d 1056, 1060 (W.D. Tenn. 2010). Further, plaintiff has presented no evidence that he attempted to obtain cellular services from these other providers, or that he could not obtain cellular services without also agreeing to an arbitration provision. *See Cooper*, 367 F.3d at 500. Additionally, plaintiff has presented no evidence that he "must

obtain cellular services" in order to run his business enterprises. In short, plaintiff has presented no evidence to shore up his assertion that he "had no choice" but to consent to Verizon Wireless's arbitration agreement.

Even if the Customer Agreement was a contract of adhesion, it is enforceable unless plaintiff can also show it is substantively unconscionable. *Id*. at 503. Plaintiff argues that the Customer Agreement arbitration clause is unenforceable as an unconscionably one-sided provision [Doc. 21 at pp. 2—4]. Plaintiff contends that the agreement limits him to arbitration, but it allows Verizon Wireless certain unilateral remedies such as changing the terms of the agreement, terminating service, or collecting service charges [*Id.*].

Plaintiff's argument is misplaced. Plaintiff cites substantive provisions of the Customer Agreement that Verizon Wireless may unilaterally change, but that does not make the arbitration provision of the Agreement unilateral or one-sided. *See Great Earth Cos.*, 288 F.3d at 898 ("courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole"). The arbitration provision in the Customer Agreement applies to both parties and to all claims, except for small claims. [Doc. 12-3 at p. 5 ("YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT."]. *See Berent v. CMH Homes, Inc.*, 466 S.W. 3d 740, 756 (Tenn. 2015). Plaintiff has presented no evidence that the terms of the arbitration agreement are one-sided, oppressive, or unfair.

B.  Jury Waiver

Finally, plaintiff argues that the arbitration agreement is unenforceable because he did not knowingly and voluntarily waive his right to a jury trial [Doc. 21 at p. 5]. Specifically, plaintiff claims that he "is not highly educated, there was no consideration for his waiver, there is a significant lack of clarity within the arbitration clause (e.g. ¶ 6), and the clause was administered through a click-wrap process" [*Id.*]. Plaintiff further argues that he used Verizon Wireless services "for years as a minor," but he was never consulted about the judicial waiver as an adult [*Id.*].

Although the Sixth Circuit has held that "the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate," *Cooper*, 367 F.3d at 506 (quoting *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 492 (6th Cir. 2001), *cert. denied*, 535 U.S. 970 (2002)), the waiver of the right to a jury trial must be knowing and voluntary. *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 420 (6th Cir. 2011) (citing *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir. 1985)). In evaluating whether a plaintiff knowingly and voluntarily waived his right to pursue employment claims in court, the Court considers: (1) plaintiff's experience, background and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the plaintiff had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; and (5) the totality of the circumstances. *Id.* at 420–21 (citing *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (en banc)).

With respect to the first factor, the complaint describes plaintiff as "an entrepreneur and leading social media influencer" with a significant online audience following "his communications, insights, and trend indications" [Doc. 1-1 at ¶ 6]. Plaintiff further avers that he is "a high-profile businessman and influencer" [*Id*. at ¶ 7] and he feared the unauthorized access to his online accounts "could irreparably damage [his] standing as a broadly respected influencer" [*Id*. at ¶ 25]. The Court must accept these allegations as true for purposes of considering a motion to dismiss, rather than the factually unsupported assertion in plaintiff's response brief that he "is not highly educated" [Doc. 21 at p. 5]. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a court must accept as true all of the factual allegations contained in a complaint); *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006) ("[a]rguments in parties' briefs are not evidence"). Even if the Court were to accept the assertion that plaintiff is not highly educated, he has nevertheless presented himself as an experienced businessman and entrepreneur. Accordingly, his background and experience outweigh any purported educational deficiencies and the Court finds that this factor weighs in favor of a knowing and voluntary waiver.

As for the second factor, the record is silent on the amount of time the plaintiff had to consider whether to sign the waiver, including whether he had an opportunity to consult with a lawyer. Plaintiff asserts that he "used Verizon for years as a minor, and was never properly consulted about the judicial waiver when renewing his plan as an adult" [Doc. 21 at p. 5]. However, the record is undisputed that plaintiff used Verizon Wireless cellular services for several years and renewed his contractual agreement with Verizon at least twice. Thus, he had multiple occasions to consider the Customer Agreement, including the

waiver. Plaintiff has presented no contrary evidence on this point. The Court finds that this factor weighs in favor of a knowing and voluntary waiver.

The third factor for consideration is the clarity of the waiver. Despite plaintiff's generic assertion that "there is a significant lack of clarity within the arbitration clause" [Doc. 21 at p. 5], the Court notes that the Customer Agreement plainly states that plaintiff is waiving his right to a jury trial. The September 2014 receipt-form agreement states: "I UNDERSTAND THAT I AM AGREEING TO … SETTLEMENT OF DISPUTES BY ARBITRATION AND OTHER MEANS INSTEAD OF JURY TRIALS" [Doc. 12-5 at p. 2]. Similarly, the March 2017 receipt-form agreement states: "I agree to the Verizon Wireless Customer Agreement including … settlement of disputes by arbitration instead of jury trial" [Doc. 12-6 at p. 3]. Further, the long form Customer Agreement provides: "YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. …YOU AND VERIZON UNCONDITIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY WAY." [Doc. 12-3 at p. 6]. The Court finds that this factor weighs in favor of a knowing and voluntary waiver.

Regarding the fourth factor, plaintiff's responsive brief asserts, also without any evidentiary support, "there was no consideration for his waiver" [Doc. 21 at p. 5]. However, the complaint alleges that plaintiff contracted with Verizon Wireless for cellular services for several years, beginning in 2013 [Doc. 1-1 at ¶ 8], which the Court accepts as true for purposes of this motion. Further, Mr. Alexander Shekhter, employed by Verizon

13

Corporate Resources Group, LLC, states that plaintiff "paid Verizon Wireless for wireless services received in relation to his account and Customer Agreement" [Doc. 12-1 at ¶ 10]. Plaintiff has presented no evidence to dispute Mr. Shekhter's affidavit. Moreover, as Verizon Wireless points out, a mutual promise is sufficient consideration to support an agreement to arbitrate under Tennessee law. *Sellers v. Macy's Retail Holdings, Inc.*, No. 2:12-CV-02496-SHL, 2014 WL 2826119, at *8 (W.D. Tenn. June 23, 2014) (quoting *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 974 (6th Cir. 2007). The arbitration provision at issue is just such an agreement; plaintiff and Verizon Wireless "BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT" [Doc. 12-3 at p. 5]. The Court finds that this factor weighs in favor of a knowing and voluntary waiver.

Finally, the totality of the circumstances convinces the Court that plaintiff knowingly and voluntarily waived his right to a jury trial. Plaintiff complains, "the clause was administered through a click-wrap process in which the Plaintiff signed a digital incorporation statement packaged in other clauses about return and restocking fees" [Doc. 21 at p. 5]. Thus, plaintiff seems to imply that the arbitration clause was hidden within other contractual provisions and he did not or could not review all of the terms. This argument fails. "[O]ne who signs a contract which he has had an opportunity to read and understand, is bound by its provisions" and thus plaintiff "cannot be excused from complying with the arbitration provision if [he] simply failed properly to read the contract." *See Inland Bulk Transfer Co. v. Cummins Engine Co.,* 332 F.3d 1007, 1016 (6th Cir. 2003) (internal citations and quotation marks omitted). Plaintiff has presented no evidence that

he was prevented from reviewing the terms of any of the agreements with Verizon Wireless or that he was incapable of understanding their terms.

After considering all of the forgoing factors, the Court finds that all of the factors weigh in favor of a waiver. Thus, the Court concludes that plaintiff has knowingly and voluntarily waived his right to a jury trial. The Court finds that the parties have entered into a valid and enforceable agreement to arbitrate any disputes between them, including the claims raised in this case.

    C.    <u>Remedy</u>

In light of the Court's conclusion that the parties have entered into an enforceable arbitration agreement and the agreement covers the instant dispute, the Court next considers the appropriate remedy. Verizon Wireless argues that because all claims must be arbitrated, dismissal of this action is appropriate [Doc. 13 at pp. 10—11]. The Sixth Circuit has stated that "'[t]he weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.'" *Green v. Ameritech Corp.,* 200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992)); *Hensel v. Cargill, Inc.,* No. 99–3199, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999); *see also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 709–10 (4th Cir. 2001) (concluding that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable") (citation omitted); *Gassner v. Jay Wolfe Toyota,* No. 4:06–CV–1335 CAS, 2007 WL 1452240, at *4 (E.D. Mo. May 15, 2007) ("Where all issues in a case must be submitted to arbitration,

it serves no purpose to retain jurisdiction and stay an action."). Because all of plaintiff's claims are arbitrable, the Court can find no reason to stay this matter pending arbitration.

**IV.    Conclusion**

For all of the foregoing reasons, the Court finds that defendant's motion to compel arbitration [Doc. 12] should be **GRANTED** and plaintiff's claims should be dismissed. An appropriate order will be entered.

    s/ Thomas W. Phillips
SENIOR UNITED STATES DISTRICT JUDGE